### WALTER PRATT & CO. v. FRASIER & CO.

1. EVIDENCE—PAROL—SALE—CONTRACT—WRITING.—If nothing is said in a written contract of sale as to the time of delivery of goods, parol evidence of the facts and circumstances attending the sale is admissible in order to determine what is a reasonable time.

2. CHARGE.—In trial of case involving delivery of goods to a certain
railroad at Iowa City, it is harmless error for Judge to say they were
to be delivered to the railroad at Chicago, that being the seller's
address, and there being no dispute as to the place of delivery.

3. CONTRACT—SALE.—Failure of seller to ship an essential article in an
entire contract vitiates it and buyer may refuse to accept the part
shipped. This contract held to be entire. *Kaufmann v. Stuckey,*
37 S. C., 7, *distinguished from this.*

Before J. E. McDONALD, special Judge, Abbeville, Oc-
tober term, 1904. Affirmed.

Action by Walter Pratt & Co. against Frasier & Co.
From judgment for defendants, plaintiffs appeal.

*Mr. J. Fraser Lyon,* for appellant, cites: *Contract being
silent as to time of delivery, law implies a reasonable time:*
2 Benj. on Sales, 4 ed., 891; 3 S. E. R., 779; 24 Ency., 2
ed., 1073; 9 Cyc., 612; 17 S. E. R., 979; 21 S. E. R., 299.
*Contract is complete and defendants are estopped from set-
ting up any part by parol:* 11 Ency., 431; 20 S. E. R., 157;
13 S. C., 369.

*Mr. Wm. N. Graydon,* contra, cites: *Parol not varying
a writing, and showing something not contained in it, is
admissible:* 61 S. C., 167; 41 S. C., 153; 31 S. C., 313; 16
S. C., 356; 43 S. C., 489; Green. on Ev., sec. 304; Elliott
on Ev., sec. 579; 1 Pet. U. S., 89; 56 S. C., 463. *Any evi-
dence is competent which is in response to allegations in
pleadings:* 60 S. C., 209; 57 S. C., 60; 60 S. C., 381; 63
S. C., 559. *Evidence was in reply:* 43 S. C., 103.

October 7, 1905. The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES. Of the sixteen exceptions by plain-
tiffs to the judgment in favor of defendants in the above
entitled case, the first six relate to rulings on the admissi-
bility of testimony, the next eight relate to the charge and

the refusals to charge the jury, and the last two relate to the refusal to grant a new trial, but all the exceptions except the 8th, 12th, 13th and 14th really depend upon one proposition—whether the Court committed error in allowing certain testimony as to the object or purpose of the purchase of goods in question by defendants, and as to the time in which said goods were to be delivered to the Chicago, Rock Island and Pacific Railway Company, upon the ground that such testimony tended to vary or contradict a written contract between the parties.  If the testimony was properly admitted, it was not error to charge the jury in accordance with that ruling and to refuse to charge propositions in conflict therewith, and in declining to grant the motion for a new trial based upon the incorrectness of such ruling.  We, therefore, will direct attention to this controlling question.

The plaintiffs brought this action against defendants for certain goods, sold and delivered to defendants at their request, consisting of an assortment of toilet articles, perfumery, drugs and merchandise, counter show-case and sundry advertising matter, amounting to $133.38.  In support of their case, plaintiffs offered a written contract and order for said goods, signed by the parties, dated October 30, 1902, which, among other things, contained these provisions: "We deliver all goods to purchasers by delivering them to the transportation company herein specified (The Chicago, Rock Island and Pacific Railway)." "We have no agreement or understanding with salesmen except as printed or written on this order." "Time is the essence of the agreement.  Separate verbal or writen agreements with salesmen are not binding upon Walter Pratt & Co.  All conditions of sale must be shown on the order."  The order was silent as to the time of shipment, the language being, "Please ship us, care of Chicago, Rock Island and Pacific Railway, the assortment of goods listed above, etc."  The testimony on behalf of the plaintiffs was to the effect that the order was for one of plaintiffs' regular $133.38 assortments of perfumery and toilet prepa-

rations with a floor counter show-case instead of the regulation revolving show-case with iron pedestal, that the order was communicated by wire on November 1, 1902, and that on same day plaintiffs delivered to the Chicago, Rock Island and Pacific Railway Co., at Iowa City, Iowa, three packages consigned to defendants at Mt. Carmel, Abbeville County, S. C., one package containing the perfumery and toilet preparations, and the show-case in two packages, one containing the glass show-case and the other the counter base for same; and the advertising matter, called for in the order, was shipped by express on November 11, 1902, and the drafts for sterling silver thimbles were mailed to list of names furnished by defendants on November 17, 1902, in accordance with the contract between the parties. The defendant offered parol testimony for the purpose of sustaining the following defense set up in the answer: "That said goods were ordered on or about the 30th day of October, 1902, and were to be shipped immediately, but the plaintiffs failed to ship said goods when they agreed to ship them, and when the goods came they were not as represented, no complete show-case being sent, in which to display said goods. That the object of these defendants in ordering said goods was to have them for holiday trade, and the defendants having failed to receive a proper show-case in which to display said goods, notified plaintiffs of the defect and they promised to remedy the same, but failed to do so until too late to make any sale of said goods for the holidays, and these defendants declined to receive said goods from the railroad company and notified plaintiffs that they were in the depot, subject to the orders of the plaintiffs."

The defendants were, over the objection of plaintiffs, permitted to testify to the effect that no such show-case as ordered reached Mt. Carmel; that the goods were to be shipped in time for the holiday trade, and were not so shipped; that upon examination of the shipment which reached Mt. Carmel there was no base to the show-case, which they promised to send by the 1st of November; that

the goods could not be displayed for the holiday trade in the condition in which they were received (referring to the absence of the counter base to the show-case) ; that the purpose for which the goods were to be shipped was for the holiday—Christmas—trade.

The testimony was admitted on the grounds, first, because the contract was silent as to the time of delivery of the goods, and, second, the testimony was responsive to the allegations of the answer. We think the testimony was admissible for the purpose of showing that the complete showcase was not delivered to the railroad company for transportation within a reasonable time after the contract was made. If nothing is said in a written contract of sale as to the time of delivery, parol evidence of the facts and circumstances attending the sale is admissible in order to determine what is a reasonable time. 2 Benjamin on Sales, sec. 1023. The testimony related to the facts and circumstances of the sale, so as to enable the jury to say whether the goods were delivered to the railroad company for transportation within a reasonable time, and was also, in part, intended to show that the counter base for the showcase was not delivered to the railroad company within a reasonable time. There was no doubt that the plaintiffs delivered what they supposed were the goods as ordered on November 1, 1902, but, on the other hand, the testimony on the part of defendants was that, while three packages reached Mt. Carmel consigned to defendants, as a matter of fact no counter base for the glass show-case was among the packages and two of the packages contained glass tops of show-cases. If this was true, there was room for an inference that plaintiffs in shipping the goods, probably kept in stock in regulation packages ready for prompt shipment, made a mistake in shipping two top cases instead of one top case and one counter base. The evidence was that defendants, finding no base for the case in the shipment as it arrived at Mt. Carmel, notified plaintiffs of same, and after some correspondence the base was shipped by express, arriving

Christmas eve, and that defendants declined to receive the goods because they could not display them without the complete show-case, and that no such case was shipped in time for the Christmas trade. In the case of *Buist Co.* v. *Lancaster Mercantile Co.*, 68 S. C., 523, 47 S. E., 978, the Court held that where an order for goods is silent as to freight, parol evidence is admissible to show the agreement of parties as to payment of freight. In that case the evidence was to the effect that plaintiffs agreed to deliver the goods at Lancaster, S. C., at prices named. In the present case the testimony merely goes to show the time of delivery, as to which the written contract was silent, and is well within the principle of the case cited.

We notice briefly an additional point in the eighth exception. It is complained that the Court erred in charging the jury: "The contract so provides that a show-case was to be furnished in which to display the goods, and Pratt & Co. bound themselves to deliver to the railroad company a show-case in which to display the goods; and if they failed to furnish the show-case, then upon the arrival of the goods at Mt. Carmel the defendants were not bound to receive them. If you find that the plaintiffs failed to deliver the goods to the railroad in Chicago, then on their arrival at Mt. Carmel the defendants would not be bound to receive them, if Platt & Co. had not fulfilled their contract." It is objected, first, to this charge that there is no provision in the contract that the goods were to be delivered *in Chicago*. We cannot regard this as prejudicial error. It is true the goods were shipped from Iowa City, Iowa, but the Court for the moment was doubtless under the impression that the goods were shipped from Chicago, as that was plaintiffs' address and place of business, as shown by letter heads and letters in evidence. There was no dispute as to whether the goods were shipped from the proper place, but the dispute was as to whether the goods were delivered to the designated railroad within a reasonable time, as con-

templated by the parties. Such a harmless inadvertence should constitute no ground for reversal.

In objection to said charge, it is further contended that defendants were bound to accept and pay for as many of the goods as were shipped in accordance with the contract, and that they could not reject the entire shipment, even if the show-case was incomplete or missing. In the twelfth, thirteenth and fourteenth exceptions the same objection is urged against other portions of the charge. In connection with said charge, the Court further charged the jury, "that if the jury find from the testimony that the goods shipped did not contain a show-case in which to display the goods, and that a show-case was essential for the proper display of said goods, then the defendants had a right to reject the shipment and the jury must find for the defendants." We think the charge is correct. The contract was an entire contract. By its terms plaintiffs' agreement to guarantee to the defendants gross profits of 33 1-3 per cent. of the amount of the order was "conditioned on the purchaser keeping the goods tastefully displayed in his store in the show-case furnished by us (Pratt & Co.) for that purpose." If no such show-case was shipped in a reasonable time, in accordance with the contract, it was a failure in a vital, essential, part affecting the whole consideration and the value of every article embraced in the contract under the scheme or plan agreed upon by the parties. This would warrant defendants in refusing to accept a partial shipment. In Benjamin on Sales, sec. 631, the rule is laid down that "where the failure of consideration is only partial, a buyer's right to rescind will depend on the question whether the contract is entire or not. Where the contract is entire and the buyer is not willing to accept a partial performance, he may reject in *toto*." 6 Ency. of Law, 790. A failure of consideration in an entire contract, although it may seem to be partial, is in reality a total failure of consideration, and will entitle the buyer to decline to accept partial performance and to rescind. If, however, the buyer accepts

or enjoys a partial performance he may lose his right to rescind, and must resort to whatever remedy he may have for abatement in price or damages for the seller's breach of contract. This case is wholly unlike *Kaufmann* v. *Stucky,* 37 S. C., 7, 16 S. E., 192, cited by appellants, for in that case the flour had been received by the defendant and some of it disposed of, so that there was, and could be, no recision of the contract by tender back of the property, and there was no proof of total failure of consideration, but the proof only went to show that a part of flour received did not come up to the sample.

The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

THE CHIEF JUSTICE *did not participate in this opinion because of illness.*